## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:17-cv-01962 (PAB/KMT)

JOHN DOE,

    Plaintiff,

v.

UNIVERSITY OF DENVER, *et al.*

    Defendants.

---

## PLAINTIFF JOHN DOE'S REPLY IN FURTHER SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

---

Plaintiff John Doe submits this Reply in further support of his Motion for Partial Summary Judgment on his Title IX-Erroneous Outcome Cause of Action (Doc. 70)

As a preliminary matter, Plaintiff notes that Defendants, in their opposition brief, failed to comply with the Honorable Judge Brimmer's Practice Standards (Civil Cases) concerning the Response to Statement of Undisputed Material Facts, which specifies that "the admission or denial (of a material fact) shall be made in separate paragraphs numbered to correspond to movant's paragraph numbering." Practice Standards, III. F(3)(b)(iv)). Here, Defendants combined 37 admissions in response to Plaintiff's Statement of Undisputed Material Facts into one sentence, rather than separating each of the 37 admissions into distinct paragraphs.[1]

In opposing Plaintiff's moving brief, Defendants attempt to draw factual similarities between this matter and another matter titled *Doe v. University of Denver* (Civil Action No. 1:16-

---

[1] Practice Standards, III. F(3)(b)(ix) provides that "[f]ailure to follow these procedures *will result* in an order striking or denying the motion or brief, and it will have to be re-submitted. Repeated failure to follow them may result in an order granting other proper relief." (emphasis added)

1

cv-00152), which was dismissed by this Court on summary judgment. Defendants, throughout their papers, reference the prior dismissal in an attempt to have your Honor dismiss the case at bar simply because DU was successful in another Title IX case. Defendants' argument is unavailing; beyond some general overlap between the named defendants and causes of action, the factual backgrounds and summary judgment records of these cases are entirely distinct. Here, as demonstrated in Plaintiff's moving brief, and as outlined in further detail below, there is no dispute that Defendants reached an erroneous outcome when they found Doe responsible for violations of DU's policies and that such finding was motivated by a gender bias against male students. Defendants' reliance on the decision issued in *Doe v. University of Denver* (Civil Action No. 1:16-cv-00152) does not establish otherwise. Instead, Plaintiff John Doe is entitled to relief on his motion for partial summary judgment.

I. **REPLY CONCERNING UNDISPUTED FACTS**

Plaintiff submits the following in reply to Defendants' Response to Plaintiff's Statement of Undisputed Material Facts.

19. There is no basis for disputing this statement. Butler testified at his deposition that "it was our understanding that [Jane Roe] was the initiator of [the actions of Friday night, March 4], and we didn't find that to be disputed." (Doc. 70-9, Butler Dep. 218:19-21). Consequently, the Investigators only pursued an investigation of the encounter on Saturday morning.

22. In concluding "Jane did not threaten John" and determining it was clear that Roe's reference to a gun was "strictly metaphorical," the Investigators give more credence to Roe's account of this interaction over Doe's, despite their failure to perform any investigation into this encounter, despite Doe's having immediately thereafter reported the incident to his R.A. while crying, and despite third-party S.J.'s statement corroborating Doe's recollection. (Doc. 70-12 at

268:2-4; Doc. 68, Exhibit 21, DU 153-154) There is no dispute that Doe "felt threatened by the conversation," regardless of Roe's underlying intent or the Investigators' subjective conclusions. (Doc. 68, Exhibit 21, DU 137)

26.   The Investigators were never made aware of Roe's motivation for filing the complaint against Doe. Slater confirmed that McAllister did not inform her of this information and that such information would have been important for her to know. (Doc. 70-12 at 248:17-23; Exhibit 1, Slater Dep. at 248:24-249:1) Even if the Investigators ultimately obtained this information from some other source, the significance of McAllister withholding critical information begs the question of what additional and/or exculpatory information McAllister may have had that she failed to disclose, with the expectation that the Investigators would likewise "be able to get this information" through other means. (Doc. 81-12 at 289:13-15)

29.   McAllister's testimony that her role as Title IX Coordinator was to validate the feelings of both parties is belied by the record. DU's Office of Equal Opportunity Procedures 2015-2016 clearly delineated the responsibilities of the Title IX Coordinator, which included for instance: overseeing the investigation and resolution of all reports, and monitoring compliance with procedural requirements. (Doc. 70-7, p. 5) Noticeably absent is any reference to the obligation to validate a party's feelings. (Doc. 70-7, p. 5) Similarly, in a presentation titled "Understanding Title IX and DU's Responsibility," which was prepared by McAllister's office and reviewed by McAllister herself, she confirmed the role of the Title IX Coordinator as laid out in DU's Policies. (Exhibit 2, McAllister Dep. at 100:22-101:3) Nowhere in McAllister's presentation was the validation of the parties' feelings addressed. (Exhibit 3, DU 1069; Exhibit 2 at 100:22-101:3) Accordingly, McAllister's testimony concerning her alleged duty to validate feelings is clearly without merit or worthy of consideration, as it is directly contradicted by the documented evidence.

Moreover, the contention that McAllister did not conclude Roe had been sexually assaulted is similarly refuted by the record. By email dated March 24, 2016, McAllister sent an email to several DU administrators, in which McAllister again confirmed Roe's allegations that she had been assaulted, notwithstanding that Roe was not copied on this email. (Doc. 70-13) Despite the fact that McAllister had not discussed the allegations with Roe, she confirmed to other DU employees that Roe "has been sexually assaulted." There was no reason for McAllister to confirm the veracity of Roe's allegations in a correspondence to DU personnel. Furthermore, her alleged use of validating language for all complainants regardless of gender is not equivalent to using validating language for both female complainants and male respondents to an investigation. At no time did McAllister validate Doe's innocence. McAllister's self-serving testimony is irrefutably contradicted by the record.

McAllister's job as Title IX Coordinator was to oversee the investigation. (Doc. 70-7, p. 5) Nonetheless, she improperly inserted herself into this investigation when she failed to disclose Roe's motivation for filing the complaint against Doe and, on a whim, appointed two investigators to conduct the investigation despite language in DU's policies that clearly indicated an investigator would be selected. (Doc. 80-3 at 194:14-195:16; Exhibit 2 at 197:17-23)

32. Roe remained in the same dormitory, and on the same floor as Doe, throughout the entire investigation and adjudication process. Olson's testimony stating Roe moved out of the dorm is false and is not corroborated by any documentation in the record. (*See* Exhibit 5, Declaration of John Doe dated December 20, 2018)

34. The testimony cited in paragraph 34 of Defendants' opposition brief does not support the facts stated therein. Doe prepared a written statement of what he assumed to be the alleged incident, based on the identity of Roe as the Complainant within the No Contact Order, as

well as Roe's previous threat to file a complaint against him. (Doc. 71-1 at 44:4-19) However, given the lack of information provided to Doe concerning the exact conduct at issue and the policies allegedly violated, his statement focused on the encounter with Roe on the night of March 4, 2016. (Doc. 68, Exhibit 18, DU 232-235) He did not learn until he received the Preliminary Report on June 10, 2016 that the alleged violations related only to the events of March 5, 2016. (Doc. 71-1 at 54:8-14)

35.   The availability of other potential resources is irrelevant. There is no dispute that a resource similar to CAPE was not made available solely to male respondents to a Title IX investigation at DU. (Doc. 70-2 at 44:23-45:5)

37.   Defendants attempt to mislead the Court in stating McAllister corrected herself, testifying she could have been mistaken about the presence of Doe's mother at their meeting. In fact, McAllister only stated she could have been mistaken about this recollection, after being confronted with the following line of questioning by counsel:

> Q:   Well, would you be surprised if I told you that my client's mother never left the state of Ohio and never met you? So if she is going to swear under oath that that happened, she would be lying also, correct, ma'am?
>
> A:   No. I may have been mistaken.

(Doc. 81-12 at 275:8-13). Defendant McAllister had previously confirmed, under oath, **no less than ten (10) times** that she did meet Doe's mother, and even described her physical appearance and the conversation they engaged in. McAllister's false testimony under oath must be considered when weighing the veracity of McAllister's self-serving statements regarding her neutrality, her alleged lack of involvement in Doe's case, and alleged lack of bias against males in the investigation process.

41. Defendants contend the Investigators did not interview the two student witnesses identified by Doe because they "did not have relevant or non-duplicative information to add to the investigation." (Doc. 81, p. 4) Yet, all of Roe's witnesses provided only duplicative information, as none of the eleven (11) witnesses interviewed were present either immediately before or immediately after the alleged incident, and each of them only learned of the allegations from Roe herself. (Doc. 68, Exhibit 18, DU 215-252)

42. The Investigators did not know whether Doe's roommate could provide any information of significance because they never spoke with him. The witnesses identified by Jane Roe did not provide any information of significance, instead reiterating only what Roe reported to them, yet the Investigators spoke with all 11 of them. (Doc. 70-12 at 206:19-207:5; Doc. 68, Exhibit 18; Doc. 68, Exhibit 21, DU 161) In fact, witness G.H., who lacked any independent knowledge of the alleged incident, was not present at the relevant time, and whom Roe wanted to have intercourse with the very next night after the alleged incident, only repeated the account reported to him by Roe; yet, he was deemed to be the most compelling witness in the case. (Doc. 68, Exhibit 21, DU 144, 161)

43. The Investigators did not interview any friends of Doe. (Doc. 68, Exhibit 21, DU 123) *See* reply to paragraph 41.

44. The stage of the investigation is irrelevant. Doe, the male respondent, was treated differently than Roe, the female complainant, when he was required to identify the information that his proposed witnesses would provide, in order to determine their relevance and whether to interview them. (Doc. 70-17, P 00192) No such similar request was documented as having been made of Roe.

45. Defendants present no evidence in the summary judgment record, or within the nearly 3,000 pages produced in discovery, to corroborate the assertion that Roe was also required to tell the Investigators what information the witnesses she identified could provide. Butler's statement alone, without corroborative evidence, is insufficient to rebut the record. Though Butler testified that there existed a "bulleted list of individuals [identified by Roe] in the case file", no such document was ever produced to Plaintiff. (Doc. 81-11 at 297:3-15)

48. Defendants conveniently overlook that in addition to the photographs, Roe also omitted portions of the medical record that included her written statement, as well as summaries from the SANE nurse and the attending physician. (Doc. 68, Exhibit 21, DU 162; Doc. 70-9 at 303:18-25, 304:1-4) This critical information could have been produced while redacting or holding back only the photographs.

59. Defendants' denial of paragraph 59 is misplaced and doesn't correspond appropriately to the statement of facts presented in paragraph 59 of Plaintiff's moving brief. Nonetheless, there is no basis for denying that every male respondent found responsible for non-consensual sexual contact during McAllister's tenure as Title IX Coordinator from June 2015 to February 2017 was expelled from DU, as this fact is established by the summary judgment record. (Doc. 70-2 at 52:24-53:2; Exhibit 4, DU 2671-2673)

65. *See* reply to paragraph 22.

69. As testified to by both Investigators, there is no dispute that the Investigators did not investigate whether Roe's report against Doe constituted retaliation in violation of DU's policies. (Doc. 70-12 at 241:24-242:3; Doc. 70-9 at 282:4-283:1) In stating "Jane always had the right to report John's sexual misconduct" DU presumes Doe's responsibility and accepts that Roe was telling the truth. According to DU's explanation, anyone has a "right" to report sexual

misconduct regardless of whether or not it is true. Roe's decision to file was a retaliatory action which should have been explored.

## II. ARGUMENT IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants in their opposition brief, miss the forest for the trees. By separating out each factual allegation relative to Doe's Title IX claim, they fail to consider the totality of the evidence which establishes an erroneous finding motivated by gender bias.

### 1. The Decision Finding Doe Responsible Was Clearly Erroneous

DU's decision finding Doe responsible for a violation of its policies was clearly erroneous. Contrary to Defendants' contention, this conclusion is not based on the testimony of Doe alone. The fact that Doe's testimony disputes Roe's account does not make it "self-serving." Instead, the summary judgment record establishes that the finding against Doe was not supported by the evidence; specifically: (1) the Investigators afforded unwarranted weight to the testimony of the 11 witnesses identified by Roe, even though none of them were present either immediately before or immediately after the alleged incident, and each person only learned of the allegations from Roe herself (Doc. 68, Exhibit 18, DU 215-252); (2) in contrast, the Investigators refused to interview the two student witnesses identified by Doe on the grounds that they would not provide any relevant or non-duplicative information[2]; (Doc. 68, Exhibit 21, DU 123; Doc. 70-12 at 208:5-9, 275:16-21) (3) Roe had a vindictive and retaliatory motive for filing the complaint against Doe[3]

---

[2] The disparate treatment applied to Doe and Roe was a clear pretext for discrimination. There is no logical explanation that Defendants could advance to explain how interviewing 11 witnesses that provided the exact same information, reiterating only what Jane Roe reported to each of them, is non-duplicative.

[3] The contention that Roe was primarily concerned for John and the "effect her report could have on John's life" is preposterous. The Investigators acknowledged they never investigated whether Roe's complaint was retaliatory; thus, their acceptance of Roe's alleged concern for Doe's well-being is unwarranted and does not refute that the finding against Doe was erroneous.

(Doc. 68, Exhibit 21, DU 137); (4) the Investigators improperly relied on the select portions of the SANE report disclosed by Roe as proof of Roe's claims, while they admittedly lacked the expertise to make any conclusion about the source of the alleged injuries, or determine that the alleged injuries were consistent with her account of the events (Doc. 68, Exhibit 21, DU 162); and (5) the Investigators failed to obtain potentially exculpatory evidence, despite their knowledge of its existence, when they permitted Roe to withhold the portion of the SANE examination records that included her written statement. (Doc. 68, Exhibit 21, DU 162; Doc. 70-9 at 303:18-25, 304:1-4).

Defendants cannot in good faith proclaim to the Court that DU provided a fair and impartial investigation when the Investigators were aware that a statement from the complaining witness prepared proximate in time to the alleged incident existed and yet they failed to **even attempt** to obtain it. Based on the foregoing, an erroneous outcome was reached when DU's investigation did not produce any reliable, credible evidence whatsoever sufficient to support a finding of responsibility against Doe under the preponderance of the evidence standard.

**2. DU's Decision Finding Doe Responsible Was Motivated by Gender Bias.**

DU's decision finding Doe responsible for a violation of its policies was motivated by gender bias against male students. Here, the actions taken by DU during the investigation process were a pretext for discrimination, thus establishing Plaintiff's entitlement to relief under the *McDonnell Douglas* burden shifting framework. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) Specifically, the decision to interview all 11 of Roe's witnesses while finally interviewing only 1 of Doe's witnesses, permitting Roe to cherry pick portions of the medical records to disclose (withholding the portion that included her statement about the source of the injuries), McAllister's withholding of information critical to the motivation of the complainant (which the Investigators confirmed they never obtained), imposing different obligations on the

parties with respect to the determination of witness relevance and releasing of medical records, and failing to pursue a retaliation charge when there is no question an investigation would have been commenced had the roles been reversed, all go towards a showing of gender bias and/or were a pretext for discrimination.

Based on the foregoing, Plaintiff John Doe respectfully requests that this Court grant his Partial Motion for Summary Judgment on his Title IX-Erroneous Outcome claim against Defendants in its entirety.

Dated this 21st day of December, 2018.

Respectfully Submitted,

*/s/ Tara J. Davis, Esq.*
*[e-filing – December 21, 2018]*

_____

Andrew T. Miltenberg, Esq.
Stuart Bernstein, Esq.
Tara J. Davis, Esq.
Nesenoff & Miltenberg, LLP
363 7th Avenue, Fifth Floor
New York, New York 10001
212-736-4500
amiltenberg@nmllplaw.com
sbernstein@nmllplaw.com
tdavis@nmllplaw.com

*/s/ Michael J. Mirabella*
*[e-filing – December 21, 2018]*

_____

Michael J. Mirabella, Esq.
Campbell Killen Brittan & Ray
270 St. Paul Street, Suite 300
Denver, CO 80206
303-322-3400(ph)
MMirabella@ckbrlaw.com

*Attorneys for Plaintiff John Doe*

## CERTIFICATE OF SERVICE

I certify that on the 21st day of December, 2018, I served a true and correct copy of the forgoing **PLAINTIFF JOHN DOE'S REPLY IN FURTHER SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** by filing through ECF, the Court's official electronic filing system, which will provide notice to the following:

**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**
**Jim Goh**
**Erin Rayner Mangum**
**600 17th Street, Suite 2700S**
**Denver, Colorado 80202**
**Telephone: 720-343-7570**
**Facsimile:   720-343-7571**
jgoh@constangy.com
rmangum@constangy.com

*Attorneys for Defendants*

                                          */s/ Tara J. Davis*
                                          Tara J. Davis, Esq.